OPINION. Hill, Judge: The question for decision is more easily stated with a background of certain basic facts, which are outlined in some detail in our findings. In 1945 petitioner received a refund of New York franchise taxes in the amount of $13,600.38. Such refund was based upon a New York statute enacted in 1945 which provided that where the war contracts of a taxpayer were renegotiated and excessive profits determined the franchise tax of such taxpayer was to be recomputed by allowing a deduction for the amount of excessive profits repaid by the taxpayer in determining its entire net income for the year or period affected by renegotiation. The amount of overpayment of franchise taxes was then to be allowed as a credit or refunded to the taxpayer. The amount above was refunded as a result of the renegotiation in 1944 of certain of petitioner’s 1943 income which accordingly reduced its net profit for 1943. Under a New York statute enacted in 1944. petitioner was entitled to a credit only instead of a credit or refund of any overpayments of franchise taxes as a result of renegotiation of contracts as above stated. In 1946 petitioner received an additional net refund of franchise taxes in the amount of $6,265. That refund came about through the renegotiation in 1945 of certain of petitioner’s profits for its year 1944. The sole question in this proceeding is whether the refunds as above indicated should be included in petitioner’s income for 1945, as respondent contends, or in its incomé for 1944, as petitioner contends. Petitioner argues, in the alternative, that if the completion of renegotiation was an event necessary to the determination of the amount of credit or refund of franchise taxes,-then the amount of credit based on its 1943 income was determinable in 1944 and such credit was properly accruable in that year. Under that position petitioner concedes that the refund of franchise taxes based upon renegotiation of its year 1944 and which it received in 1946 is includible in its income for 1945, as the respondent contends. The respondent maintains that: As the New York statutes were worded, petitioner was not entitled to consider its franchise tax for 1943 as a separate unit to be credited against the 1944 franchise tax. The 1943 tax became merged with that of 1944 as a single unit. Petitioner's argument, therefore, that as to the 1943 excise tax, every fact had occurred by the end of 1944 which determined the amount and fixed petitioner’s right to receive it, fails to take into consideration the very language of the statutes themselves which created the credit right which petitioner claims. He cites as authority Burnet v. Sanford & Brooks Co., 282 U. S. 359; and Security Flour Mills Co. v. Commissioner, 321 U. S. 281. We do not agree either with respondent’s interpretation of the New York statute or that the amount of $13,600.38 is includible in petitioner’s income for 1945. It is now well established that if at the close of the taxable year an accrual basis taxpayer has all of the basic data or facts from which he may within reasonable limits determine an amount which he has a fixed right to receive, such amount is accruable. Continental Tie & Lumber Co. v. United States, 286 U. S. 290; United States v. Anderson, 269 U. S. 422; Security Flour Mills Co. v. Commissioner, supra; Uncasville Mfg. Co. v. Commissioner, 55 Fed. (2d) 893; ACF-Brill Motors Co., 14 T. C. 263. This is true whether the amount in question is a credit to be applied in abatement of taxes owed for any year or a refund. See Hurd Millwork Corporation, 44 B. T. A. 786. Our immediate question, then, is whether or not there were present at the end of 1944 those factors requisite for a determination of the credit provided by the New York law as it read in 1944. We believe the facts show that they were. Petitioner’s year 1943 was renegotiated and a final agreement with respect thereto was executed on-August 18,1944. By the end of 1944, therefore, it knew its 1943 net income after renegotiation. By a New York law, which is described in our findings, if the income of any taxpayer for any period should be renegotiated by the United States a credit was to be allowed. In the circumstances of this case, under the applicable New York statute, such credit here was to be allowed as an abatement of petitioner’s 1944 franchise tax. (Chapter 510, Laws of 1944, sections 1 to 3.) It is thus apparent that by the end of 1944 petitioner knew all of the factors necessary to a determination of its credit based on its 1943 net income after renegotiation. It follows that the amount of $13,600.38 was properly accruable in petitioner’s taxable year 1944. See Taylor Instrument Cos., 14 T. C. 388. With respect to the amount of $6^265, however, all of the elements necessary to ascertain the amount of credit were not known at the end of 1944. One very vital factor, the final determination of excessive profits on its war contracts, was missing. Petitioner agreed to the determination of excessive profits on its war contracts on October 17, 1945. By virtue of this agreement all of the factors necessary to a determination of the petitioner’s credit or refund of its New York franchise tax based upon its 1944 net income after renegotiation became known in its tax year 1945 and not prior thereto. We accordingly hold that the amount of $6,265 is properly accruable in petitioner’s taxable year 1945. Decision will be entered under Buie SO.